IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEVE E. BOWMAN,

        Plaintiff,

vs.                                         No. CIV 98-1252 BB/LCS

LARRY G. MASSANARI,[1] ,
**Acting Commissioner,**
**Social Security Administration,**

        Defendant.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS**
**AND RECOMMENDED DISPOSITION**

THIS MATTER came before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Decision (*Doc. 9*), filed June 18, 1999.  The Commissioner of Social Security issued a final decision denying the Plaintiff his claim for a period of disability, disability insurance benefits, and supplemental security income benefits based on disability.  The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, finds that the motion is well-taken and recommends that it be GRANTED.

**PROPOSED FINDINGS**

**I. PROCEDURAL RECORD**

    1.        Plaintiff Steve Bowman filed an application for a period of disability, disability

---

[1] Effective March 29, 2001, Larry G. Massanari was appointed to serve as Acting Commissioner of Social Security. Pursuant to FED. R. CIV. P. 25 (d), Larry G. Massanari, Acting Commissioner of Social Security, is substituted for William A. Halter, Acting Commissioner of Social Security, as the defendant in this action.

insurance benefits and supplemental security income with the Social Security Administration on June 13, 1996 alleging a disability since June 1, 1987 due to major depression, herniated discs in his neck, a left hand wound, and a shoulder separation. *See* R. at 128 and 131. Plaintiff's application was denied at the initial level on November 19, 1996, *see* R. at 101, and at the reconsideration level on February 17, 1997, *see* R. at 112. Plaintiff appealed the denial of his claim by filing a Request for Hearing by Administrative Law Judge on February 20, 1997. *See* R. at 115.

    2.    The Commissioner's Administrative Law Judge (ALJ) conducted a hearing on Bowman's application on September 16, 1997. *See* R. at 11. The ALJ made the following conclusions according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993): the claimant had not engaged in substantial gainful activity since May 7, 1996; the severity of the claimant's impairments did not meet or equal a listed impairment; the claimant's subjective complaints and functional limitations, including pain and mental impairments were not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility; and the claimant had a residual functional capacity for at least light work. *See* R. at 12 and 13. Because of this finding, the ALJ proceeded to Step 5 of the sequential analysis. The ALJ finally concluded that Mr. Bowman was not disabled based on the testimony of a vocational expert who stated that Mr. Bowman would be able to do his current work as a vegetable vendor. *See* R. at 21. Plaintiff objects to these findings. Particularly, to the ALJ's finding that the Plaintiff's alleged symptoms, especially regarding pain, were not credible and that his mental impairment was not severe.

    3.    The ALJ entered his decision on September 26, 1997. *See* R. at 11-25. Thereafter,

the Plaintiff filed a request for review in October of 1997 to the Appeals Council. *See* R. at 6. On August 5, 1998, the Appeals Council issued its decision denying request for review and upholding the final decision of the ALJ. *See* R. at 4. The Plaintiff subsequently filed his complaint for court review of the ALJ's decision on October 7, 1998. (*Doc. 1*).

## II. STANDARD OF REVIEW

4.  The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

5.  In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *Thompson*, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. *See* 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

6.	At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience.  *See id.*

### III. ADMINISTRATIVE RECORD

7.	The record indicates that in 1987, Mr. Bowman injured his neck, incurred a gunshot to his left hand, and had arthroscopic surgery on his knee. *See* R. at 131-133. Plaintiff is currently fifty-four years of age. *See* R. at 140. The medical evidence also reveals that Mr. Bowman was hospitalized in 1993 following a suicide attempt. *See* R. at 167. He was discharged with the diagnoses of depression, major type; dysthymic disorder;[2] and chemical dependence, mixed, opiates and alcohol. *Id*.

8.	In June of 1993, Mr. Bowman was admitted into the hospital following inhalant overdose in preparation for a suicide attempt. *See* R. at 167. He was admitted to the Adult Unit in order to evaluate his suicide risk and to treat his depression. *Id*. Dr. Robert T. Kellogg was the attending physician the night Mr. Bowman was admitted. Dr. Kellogg's notes state that Mr. Bowman previously attempted suicide when he was twenty-three by overdosing on approximately

---

[2] Dysthymic disorder is defined as "a chronically depressed mood that occurs for most of the day more days than not for at least two years." American Psychiatric Ass.n, *Diagnostic and Statistical Manual of Mental Disorders* 345 (4th Ed. 1994).

forty-five sleeping pills. *Id*. The discharge summary also noted that Mr. Bowman "treated himself with alcohol over a 20 year period and more recently drugs." *See* R. at 169. Dr. Kellogg's final diagnosis was "depression, major type; dysthymic disorder; and chemical dependence, mixed, opiates and alcohol; status post traumatic injury, right shoulder and neck, with nerve impairment; status post gunshot wound, left hand, with loss of digit; GAF [3] on admission 40, highest level past year 60." *See* R. at 169 and 170. The doctor's follow up advice was for Mr. Bowman to apply for treatment at Casa and Bernalillo County Mental Health Center and he prescribed him Zoloft and Buspar. *Id.*

9.  The record contains approximately seventy pages of progress notes from Valencia Counseling Services. *See* R. at 217-287. A summary of the progress notes state that Mr. Bowman suffers from depression, anxiety, personality disorders (borderline with narcissistic characteristics), problems with past relationships with family members, and suicidal ideation. *See* e.g. R. at 217, 222, 238, 243, 250, and 273. On one occasion in September of 1996, the counselor noted "client says he cannot live too much longer with the emotional pain he feels and wants treatment. Therapist discussed client's behaviors and his inability to tolerate unpleasant affect, his fears of abandonment and inability to tolerate intimacy." *See* R.at 221.

10. Mr. Bowman was also seen by Dr. Emmett Altman in January of 1993, June of 1994, and February of 1995. Dr. Altman concluded after a thorough physical examination, that Mr. Bowman "would be incapacitated for any medium to heavy laborious work." *See* R. at 291.

---

[3] Global Assessment of Functioning (GAF) is a scale which considers psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. The scale from 31 to 40 indicates "some impairment in reality or impairment in speech and communication or serious impairment in several of the following: occupational or school functioning, interpersonal relationships, judgment, thinking, or mood." American Psychiatric Ass.n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th Ed. 1994).

In 1995, Dr. Altman reiterated Mr. Bowman's incapacitation. *See* R. at 289.

  11. In October of 1996, Dr. Gerald S. Fredman evaluated Mr. Bowman and diagnosed him with major depression, recurrent, currently moderate; alcohol dependance, in remission; opioid dependance, in remission; GAF current 53, moderate to serious impairment. *See* R. at 297. Dr. Fredman also stated that "[Mr. Bowman] is currently under psychiatric care, but continues to demonstrate depressive symptoms. These symptoms now include diminished energy level, diminished motivation, problems with concentration and social isolation." *Id*. Mr. Bowman's prognosis stated "[t]he prognosis for this man with continued psychiatric care is fair. From a psychiatric perspective, the potential for sustained work activity at this time would be fair . . . he probably could perform one or two-step repetitive tasks at a competitive rate. . . I would defer to another physician about the limitations due to his physical problems. He is probably capable of handling whatever funds are due him." *See* R. at 298.

  12. In November of 1996, Dr. Clint Morgan filled out a functional capacity form after review of the record only. *See* R. at 308. He rated Mr. Bowman's understanding and memory, sustained concentration and persistence, social interaction, and adaptation as all "not significantly limited." *See* R. at 308-309. After reading the form, it is obvious that Dr. Morgan reviewed Dr. Fredman's psychiatric evaluation only. He practically wrote verbatim on the form Dr. Fredman's comments and checked off all the appropriate blocks to accurately mirror Dr. Fredman's evaluation. *See* R. at 310 and 314.

  13. The ALJ published his decision on September 26, 1997. *See* R. at 22. The ALJ also completed a Psychiatric Review Technique Form (PRT) which he appended to the decision. Although the ALJ cited as present a depressive syndrome characterized by decreased energy and

difficulty concentrating or thinking or thoughts of suicide, he ranked Mr. Bowman's functional limitation and degree of limitation as "slight." *See* R. at 22-24.[4]

## III. DISCUSSION

14. Plaintiff essentially raises the two arguments in support of his Motion to Reverse or Remand the Administrative Agency Decision. First, Plaintiff argues that the ALJ erred in assessing his credibility. Secondly, the Plaintiff argues that the ALJ erred in finding that his mental impairment was non-severe.

### Credibility Determination

15. Plaintiff contends that the ALJ erred in assessing his credibility. Specifically, Plaintiff asserts that the ALJ failed to support with substantial evidence his findings that the Plaintiff's alleged symptoms, especially regarding pain, were not credible. "Credibility determinations are peculiarly the province of the finder of fact," and will not be overturned if supported by substantial evidence. *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir.1990). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Huston v. Bowen*, 838 F.2d 1125, 1131, 1133 (10th Cir. 1988). The ALJ must "articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical. *Kepler*, 68 F.3d at 391 (internal quotations omitted). Failure to make credibility findings regarding critical

---

[4] A "marked" impairment represents a degree of disability that satisfies two of the four listing requirements. The Tenth Circuit has stated that "the mental assessment forms evaluate the claimant's abilities as 'unlimited/very good,' 'good,' 'fair,' and 'poor or none.' Moreover, the forms' definition of 'fair' is misleading. Though describing a functional ability as 'fair' would imply no disabling impairment, 'fair' is defined to mean: 'Ability to function in this area is seriously limited but not precluded. We conclude that 'seriously limited but not precluded' is essentially the same as the listing requirements' definition of the term 'marked.'" *Cruse v. United States Department of Health & Human Services,* 49 F.3d 614, 618 (10th Cir. 1995) (citations omitted). A "slight" impairment has not been defined.

testimony "fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability." *Id.* (internal quotations omitted). The ALJ must make an express credibility determination if he disbelieves a claimant's pain testimony. *See Schroeter v. Sullivan*, 977 F.2d 391, 394-95 (7th Cir. 1992). It is not this Court's job to make an independent judgment as to the credibility of the claimant's testimony regarding his subjective physical symptoms. "[T]he determination of credibility is left to the observations made by the Administrative Law Judge as the trier of fact." *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir.1983).

   16. Specifically, the Plaintiff contends that the ALJ relied on three factors when determining credibility: the absence of spasm, motor loss, and muscle wasting, the fact that no physician has ever stated Mr. Bowman cannot work, and the fact that Mr. Bowman's daily activities include performing household tasks such as cooking, cleaning, shopping and driving. The Plaintiff asserts that these factors are not sufficient to support the ALJ's finding that Mr. Bowman's complaints of pain were not credible. The ALJ not only considered these factors in his decision, but he also went into a lengthy discussion of Mr. Bowman's demeanor at trial. The ALJ stated that "Mr. Bowman was observed to bend over and touch the floor and twist his body from side to side, without any indication that he was doing these movements carefully or expecting pain." *See* R. at 12. In addition to noting Mr. Bowman's demeanor and actions during the hearing, the ALJ also referred to objective evidence including medical evidence establishing that Mr. Bowman does not suffer from muscle spasm, sensory or motor losses, or muscle weakness or wasting. *See* R. at 20.

   17. Since it is not the duty of this Court to make an independent judgment as to the

credibility of the Plaintiff's testimony regarding his subjective physical symptoms, this Court defers to the ALJ's finding. However, the ALJ must have based his finding on substantial evidence. In coming to his conclusion, the ALJ based his credibility assessment of the Plaintiff on objective evidence in the record and the Plaintiff's own testimony given at the hearing. Therefore, this Court finds that the ALJ properly based his findings on sufficient evidence and recommend finding that Plaintiff's testimony of subjective complaints and functional limitations were not credible.

### **Mental Impairment Assessment**

18.     The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. *See* 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *See Thompson*, 987 F.2d at 1487. At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See id.*

19.     Plaintiff argues that the ALJ erred in his assessment at step two of the sequential analysis. Specifically, the Plaintiff asserts that the ALJ erred in finding that Plaintiff's mental impairment was non-severe. Mr. Bowman contends that not only did the ALJ fail to support with

substantial evidence his findings that the Plaintiff's mental impairment was not severe under step two of the sequential evaluation, the ALJ also failed to discuss the uncontroverted evidence he chose not to rely on.

20. At step two of the sequential analysis, the Plaintiff must show that he has an impairment or combination of impairments which are severe enough to limit his ability to do basic work activities. 20 C. F. R. §§ 404.1520( c), 416.920( c). Basic work activities include, for example, physical functioning; ability to hear, see, and speak; ability to follow simple instructions; use of judgment; appropriate responses to fellow workers, supervisor, and usual work situations; and the ability to deal with changes in routine work. *Id.* An impairment is not severe if it is only a slight abnormality with a minimal effect on the ability to work. Soc. Sec. Ruling 85-28. Medical evidence alone is evaluated at this step. *Id.* If the evidence is unclear as to whether the impairment is severe, the sequential evaluation process is nevertheless continued. *Id.*

21. Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that his impairment is not so slight and its effect is not so minimal. *See McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir.1986); *see also Taylor v. Bowen*, 738 F.Supp. 436, 440 (D. Kan. 1987). "A claimant need only make a 'de minimus' showing of medical severity. An impairment is not severe only if it 'would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered.'" *Hill v. Chater*, 99 F.3d 1149, 1149 (10th Cir. 1996)

(citing SSR 85-28, 1985 WL 56856, at *3); *see also Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988).

22.     The ALJ stated that Mr. Bowman's mental impairment did not meet a listed impairment and was non-severe. *See* R. at 12 and 20. While an impairment may not satisfy the requirements to be considered a listed impairment, it may nonetheless be severe enough to have a significant effect on a claimant's ability to work. When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow a special procedure for evaluation of mental impairments set forth in 20 C. F. R. § 404.1520a. *See Cruse v. U. S. Dept of Health & Hum. Serv.*, 49 F. 3d 614, 616 (10th 1995). This procedure involves not only looking to see if an impairment falls within Parts A and B of a listed impairment, but also completing a PRT form for a determination of a claimant's mental residual functional capacity. *Id.* at 618. At the administrative hearing level, the ALJ may complete the PRT form with or without the assistance of a medical advisor. 20 C. F. R. § 404.1520a(d)(1). However, the standard form must be appended to the decision. 20 C. F. R. § 404.1520a(d)(2).

23.     The ALJ in this case stated in his step two analysis that "there is no objective evidence that the claimant is unable to perform work activities at any level of exertion . . . [t]he claimant has had a residual functional capacity for at least light work. Nonexertional factors have not significantly altered this work capacity . . . [and that there is] no evidence of pain or depression serious enough to significantly limit his ability to perform the full range of light work." *See* R. at 12, 13 and ,20. The Plaintiff contends that the ALJ's statements are not supported by substantial evidence.

24.     In June of 1993, Mr. Bowman was hospitalized following a suicide attempt. *See* R.

at 167. He was discharged with the diagnoses of depression, major type; dysthymic disorder; and chemical dependants, mixed, opiates and alcohol. *Id.* The attending physician was Dr. Kellogg. *Id*. Dr. Kellogg stated within his discharge summary that the "patient was fully oriented and alert and cooperative. Mood was sad and affect appropriate to mood and depressed. . . . There was no evidence of misperceptions or organized delusion thought. Intellectual functioning was judged to be average range. . . GAF on admission 40, highest level past year 60. . . Patient is to apply for treatment at Casa and the Bernalillo County Mental Health Center." *See* R. at 167-170. Dr. Kellogg prescribed Zoloft and Buspar and set forth a treatment plan to involve individual and group psychotherapies for increase self-esteem, treatment of depression and suicidal ideation. *See* R. at 170 and 198.

   25. Mr. Bowman started psychotherapy sessions at the Valencia Counseling Services around the end of 1995. *See* R. at 287. There are progress notes dated all the way up to September, 1996. *See* R. at 217. The record in this case has approximately seventy pages of progress notes recorded by various counselors. Some notes indicate that Mr. Bowman struggles from depression, recurring thoughts of suicide, anxiety, narcissistic tendencies, poor frustration tolerance, poor sleep, and drinking for self-medication. *See* R. at 223, 224, 243, 250, 273, 351, and 352.

   26. Moreover, in October of 1996, Mr. Bowman was seen by Dr. Gerald S. Fredman. *See* R. at 294. Dr. Fredman stated that he felt Mr. Bowman to be of average intelligence and that the information provided by Mr. Bowman was consistent with the data in the medical records. *See* R. at 296. Dr. Fredman also stated that Mr. Bowman has had a "history of depression for many years . . [a]t present, he is under psychiatric care, but continues to demonstrate depressive

12

symptoms . . [including] diminished energy level, diminished motivation, problems with concentration and social isolation. There is also a past history of alcohol and opioid dependance, but these problems are now in remission." *See* R. at 295-297. The doctor's diagnostic impression was that Mr. Bowman had "major depression, recurrent, currently moderate;" alcohol and opioid dependence in remission; and a GAF scale of 52, moderate to serious impairment. *See* R. at 297. His prognosis for Mr. Bowman did in fact conclude that from a "psychiatric perspective, the potential for sustained work activity at this time would be fair. . . he probably could perform one or two-step repetitive tasks at a competitive rate." *See* R. at 298.

      27.     In this case, while the ALJ appended a PRT form to his decision, it was not completed in conformance with the evidence in the record. I find that the above psychological and psychiatric evidence could more than satisfy the required "de minimus" showing of medical severity. There is substantial evidence in the record to demonstrate that Mr. Bowman's mental impairment could have at least a minimal effect on his ability to work. Moreover, the ALJ failed to discuss the evidence he considered in reaching the conclusions expressed on the form as required by *Cruse*. *See Cruse*, 49 F.3d at 617-18. In addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)) ("a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position."). In light of the large amount of medical evidence in the record pertaining to Mr. Bowman's mental impairment, the ALJ's determination that Mr. Bowman did not suffer from a severe mental impairment is not supported by substantial

evidence. On remand, the ALJ should complete the sequential evaluation analysis, especially his assessment of Mr. Bowman's residual functional capacity, in light of his severe, non-exertional mental impairment.[5] The ALJ should also give reasons as to why he disregarded uncontroverted evidence of Mr. Bowman's mental impairment.

28. The Commissioner argues that the ALJ sufficiently supported his decision with the following evidence: Dr. Fredman's assessment of the claimant, records from Valencia Hospital, and the VE's testimony. First, the Commissioner points to Dr. Fredman's evaluation of Mr. Bowman. Dr. Fredman stated that Mr. Bowman's "potential for sustained work activity . . . would be fair" and " he probably could perform one or two-step repetitive tasks at a competitive rate." *See* R. at 298. In light of Dr. Fredman's assessment of Mr. Bowman, the doctor's overall assessment that he could perform sustained activity including repetitive tasks does not preclude the fact that there is evidence probative of Mr. Bowman's depressive condition. The bulk of Dr. Fredman's evaluation discusses Mr. Bowman's worsened depressive condition, his diminished energy and concentration levels, and his tendencies towards suicidal thought. *See* R. at 294 to 298. Although the ALJ reiterates Dr. Fredman's complete evaluation, the ALJ failed to identify why he disregarded the evidence which supported Mr. Bowman's psychiatric problems.

29. In addition, SSR 95-5p states that "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of

---

[5] Although the ALJ reached step five in his evaluation of Mr. Bowman's physical impairments, I find that he rejected his claim of mental impairment at step two. Therefore, I find that there is no need to evaluate the ALJ's assessments at steps three, four, and five, since the severity of the Plaintiff's mental impairment would have altered those findings.

pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies on the evidence as a whole and set forth a logical explanation of the individual's ability to work." Although the ALJ sufficiently restated the evidence from the record within his opinion, he offers no explanation as to why he refused to consider objective evidence of Mr. Bowman's depressive condition. *See e.g.* R. at 167, 169, 198, 217-287, and 294-298. The ALJ did not explain why he rejected significantly probative and uncontroverted evidence in the record indicating that Plaintiff's mental impairment could preclude him from working. *Id.*; *see also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir.1996) ("in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects"); *see also Barnett*, 231 F.3d at 689 ("ALJ is charged with carefully considering all the relevant evidence and linking [her] findings to specific evidence").

      30.    The progress notes from Valencia Counseling Services alone represent a large portion of the record and are replete with comments pertaining to Mr. Bowman's psychological problems. *See* R. at 217, 221, 222, 224, 225, 226, 227, 236, 242, 243, 247, 250, 252, 259, and 273. The ALJ also failed to give the proper weight to the VE's testimony. When the VE was asked by Plaintiff's counsel about how symptoms similar to those experienced by Mr. Bowman would affect the availability of jobs in the competitive market, the VE answered that a person with those problems could not work anywhere. *See* R. at 75. Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is "significantly probative." *See Clifton*, 79 F.3d at 1009-10. Without explanation, the ALJ passed over significant probative evidence in the record. *See* R. at

223, 224, 243, 250, 273, 351, and 352. I recommend remanding this case to the Commissioner for further proceedings consistent with this opinion.

## RECOMMENDED DISPOSITION

The ALJ did not apply correct legal standards and his decision is not supported by substantial evidence. The Plaintiff's Motion to Reverse and Remand Administrative Decision, filed June 18, 1999, should be granted. This case should be remanded to the Commissioner for completion of the sequential evaluation process with appropriate consideration accorded to the Plaintiff's mental impairment, completion of the PRT form to reflect the evidence of record, and discussion in the opinion of the evidence the ALJ considered in reaching the conclusions expressed on the PRT form. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and recommendations that party may file with the Clerk of the District Court written objections to such proposed findings and recommendations.  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**